**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Troutman,<br><br>               Plaintiff,<br><br>v.<br><br>Michael Astrue, Commissioner, Social Security Administration,<br><br>               Defendant. | No. CV-12-00325-PHX-DGC<br><br>**ORDER** |

Plaintiff Kenneth Troutman filed an application for disability benefits on May 27, 2009. Tr. 90-98. His claim was denied initially on July 22, 2009 (Tr. 63-65), and upon reconsideration on October 7, 2009 (Tr. 67-69). Following an administrative hearing on January 20, 2011 (Tr. 30-45), the administrative law judge ("ALJ") denied Plaintiff's claims on February 16, 2011 (Tr. 51-59). The Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the ALJ's decision the final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g). Doc. 13. The parties have not requested oral argument. For reasons that follow, the Court will remand for further proceedings.

**I.     Background.**

Plaintiff completed high school, served in the Navy during the Vietnam War, and worked for 23 years as a metal fabricator. Tr. 118, 150. He suffered a left leg fracture in 1978 that left him with permanent knee damage. Tr. 34, 265. Due to the severity of the

knee injury, his treatment was limited to nonsurgical bone malunion. Tr. 265. Plaintiff also suffers from post-traumatic stress disorder ("PTSD") (Tr. 160, 202-06) and social isolation (Tr. 200).

Plaintiff retired from his metal fabricator position on January 2, 2002. Tr. 150. On May 5, 2009, the Department of Veterans Affairs assigned Plaintiff service connection for PTSD with an evaluation of 50 percent, effective February 19, 2008 (Plaintiff's "VA rating"). Tr. 86-89. Although Plaintiff did not experience "many of the symptoms associated with a 50 percent evaluation," the examiner nonetheless concluded that he was "fully socially impaired." Tr. 88. Veterans Affairs assigns an evaluation of 50 percent for "occupational and social impairment with reduced reliability and productivity[.]" Tr. 88. "A higher evaluation of 70 percent is not warranted unless there are deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood[.]" Tr. 89.

Plaintiff alleges a disability onset date of December 31, 2007, which coincides with his date last insured.[1] Doc. 13, at 6; Doc. 14, at 2; Tr. 92.

## II. Standard of Review.

Defendant's decision to deny benefits will be vacated only if it is not supported by substantial evidence or is based on legal error. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* To determine whether substantial evidence supports Defendant's decision, the Court must review the administrative record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support Defendant's determination, the Court cannot substitute its

---

[1] In order to qualify for disability insurance benefits, a claimant must establish a disability on or before his date last insured. *See* 20 C.F.R. §§ 404.101, 404.120, 404.315; *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (a claimant "must establish a disability on or prior to" the date last insured for disability benefits).

own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.   Analysis.**

Plaintiff claims that the ALJ erred by (1) failing to find his impairments severe, (2) failing to make a required inference or, alternatively, failing to call on a medical advisor to assist in determining Plaintiff's disability onset date, and (3) failing to evaluate multiple medical opinions. Doc. 13, at 2.

**A.   Severity of Plaintiff's Impairments.**

The ALJ found that "there is insufficient evidence demonstrating that the claimant's limitations were severe prior to his last date insured." Tr. 56. Plaintiff argues that this finding was erroneous given the evidence in the record. Doc. 13, at 4-5. Plaintiff bears the burden of showing a severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1508, 404.1521. Basic work activities include responding appropriately to supervision, coworkers, and usual work situations; dealing with changes in a routine work setting; understanding, carrying out, and remembering simple instructions; and using judgment. 20 C.F.R. § 404.1521(b)(3)-(6).

At his administrative hearing, Plaintiff reported constant leg pain at a level seven on a scale of zero to ten, and indicated that his pain worsened with physical activity. Tr. 38; Doc. 13, at 5. A June 23, 2009 leg MRI showed distortion of Plaintiff's left tibia from his old, healed leg fracture, some fluid in the soft tissue not involving the bone marrow, prominent left knee joint effusion with a prominent lobular Baker's cyst, and a suggestion of osteoarthritis of the left knee. Tr. 260-61; *cf.* Doc. 13, at 5 ("The June 23, 2009 leg MRI tells a story of long standing and degenerative disease resulting in chronic inflammation and tissue destruction"). Plaintiff also cites a note by Dr. Laura Vandenheede describing bone-on-bone degenerative joint disease of Plaintiff's left knee. Tr. 264; Doc. 13, at 5. Plaintiff claims that these symptoms and diagnosis support a

finding of severe impairment relating to his left leg. Doc. 13, at 5.

In finding that Plaintiff's knee pain was not severe, the ALJ noted that, despite Plaintiff's allegations of worsening knee pain since his injury in 1978, Plaintiff's work history shows that he was able to perform medium to heavy work on a consistent basis for over 23 years, until January 2, 2002. Tr. 56; *see* Tr. 150 (Plaintiff's work background). Although approximately six years elapsed from the time Plaintiff stopped working until his date last insured, the ALJ noted that Plaintiff's daily activities were inconsistent with his allegations of worsening knee pain . Tr. 56. In July 2008, Plaintiff reported that he hauled 800 gallons of water per day to keep his trees alive and to have water for his house. Tr. 182. In October 2008, Plaintiff reported that he was in the process of building a cabin on his property. Tr. 177. In November 2008, Plaintiff reported that he passed time by cutting firewood. Tr. 176. The ALJ also took note of the paucity of objective evidence and treatment notes prior to December 2007 showing that Plaintiff suffered severe left knee pain. While February 2010 x-rays of his left knee showed medial degenerative joint disease, earlier studies only showed knee effusion. Tr. 56, 208-09 (June 23, 2009 MRI).

With respect to his mental limitations, Plaintiff claims that he suffers from hyper vigilance, exaggerated startle response, anger, road rage, sleep disturbances, fear, anxiety, forgetfulness, and flashbacks. Doc. 13, at 5 (citing Tr. 196, 200, 205). He also suffers from social isolation. Tr. 200. He lives "off the grid" and has limited interpersonal contacts. Doc. 13, at 5; *see* Tr. 204 (Plaintiff lives "out of town and off the road," and uses solar and wind power for electricity.) Plaintiff argues that these symptoms support a finding of severe impairment as it relates to his PTSD.

The ALJ found that although Plaintiff alleged longstanding symptoms of PTSD since his involvement in the Vietnam War, he made no effort to seek mental health services, participate in counseling, or take psychiatric medication prior to December 31, 2007. Tr. 56-57. Although Plaintiff alleged that he was unable to afford treatment until after that date, he also testified that upon retiring in 2002 he was paid a pension. Tr. 57.

The ALJ concluded that it was not for lack of financial resources that Plaintiff did not seek psychiatric treatment. *Id.* When Plaintiff did seek treatment in 2008, his progress notes indicated likely "longstanding" PTSD, but with only "mild" symptoms. Tr. 285; *see* 20 C.F.R. § 404.1520a(d)(1). In spite of the symptoms that Plaintiff allegedly suffered as a result of his PTSD, the ALJ noted that he worked for 23 years without incident. Tr. 57. Although Plaintiff alleged social isolation, the ALJ noted that he had lunch with the captain of his swift boat over the Fourth of July weekend in 2009 and that "it was an enjoyable experience," that he spent time with his family, including grandchildren, that he has a "couple [of] neighbor friends" and friends who "do visit pretty often," that he talks to former co-workers when he sees them, that he feels a strong sense of responsibility and attachment to others, and that he has a girlfriend and is capable of maintaining a long-term relationship. *Id.*; *see* Tr. 171, 182, 195, 205.

The ALJ's decision that Plaintiff's knee pain and PTSD symptoms are not severe is supported by substantial evidence. *Young*, 911 F.2d at 184. The medical record does not establish any work-related limitations as a result of Plaintiff's physical or mental impairments. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (upholding nonsevere finding where the medical evidence did not establish any work-related limitations as a result of an impairment).

### B. Disability Onset Date.

Plaintiff alleges that, pursuant to Social Security Regulation 83-20 ("SSR 83-20"), the ALJ erred by failing to make the required inference of Plaintiff's disability onset date, or alternatively, by not calling on a medical advisor to help determine the onset date. Doc. 13, at 5-7. Defendant responds that SSR 83-20 is inapplicable because a finding of disability is a prerequisite to the requirement that the ALJ determine the onset date of that disability, and there has been no finding of disability. Doc. 14, at 14. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (because ALJ found petitioner Sam was not disabled at any time through the date of the decision, the question of when he became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply); *Scheck v. Barnhart*,

357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date. In short, SSR 83-20 does not apply."). Plaintiff does not address the applicability of SSR 83-20 in his reply. Instead, he suggests that because the Department of Veterans Affairs found him disabled by 50 percent effective February 19, 2008, and because the record is void of intervening events between his December 31, 2007 date last insured and February 19, 2008, he likely experienced the onset of disabling PTSD prior to his date last insured. Doc. 15, at 3.

The ALJ did not commit legal error by not inferring a disability onset date or by not calling a medical expert to help establish an onset date. SSR 83-20 is inapplicable because the ALJ did not find that Plaintiff was disabled at any time from the alleged disability onset date through the date last insured.[2] Tr. 59. Furthermore, the ALJ properly considered Plaintiff's VA rating in her decision, pursuant to *McCartey v. Massanari*, 298 F.3d 1072, 1075-76 (9th Cir. 2002) ("[A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical result, the ALJ must consider the VA's finding in reaching [her] decision.") (citation omitted). The ALJ considered Plaintiff's VA rating of 50% disabled, but also noted that the rating dates from February 19, 2008, after Plaintiff's date last insured. Tr. 56. The ALJ did not commit legal error by concluding that Plaintiff's VA rating was not dispositive of his alleged disability for purposes of SSA benefits, which requires that Plaintiff establish disability on or before his date last insured. *See McCartey*, 298 F.3d at 1076 ("Because the VA and SSA criteria for determining disability are not identical . . . the ALJ may give less weight to a VA disability rating if [she] gives persuasive, specific, valid reasons for doing so that are supported by the record.").

### C. Medical Opinions.

The ALJ evaluated only the medical opinion of Dr. Vandenheed. Tr. 58. Plaintiff claims that the ALJ erred by failing to consider the opinions of his consultative

---

[2] December 31, 2007 is both the alleged disability onset date and the date last insured. Tr. 59, 92.

- 6 -

examiners, Dr. Ronald Teed and Dr. Joseph Ring. Doc. 13, at 8. Dr. Teed opined in September 2010 that Plaintiff had moderate difficulties with attention, concentration for extended periods, and interacting appropriately with others and with supervisors. Tr. 229. Dr. Teed's notes indicate that Plaintiff reported working as a high pressure welder for 23 years before he got "burned out." Tr. 226. Dr. Ring examined Plaintiff in September 2010. He opined that Plaintiff could stand or walk for two hours and sit for six to eight hours in an eight-hour work day, did not need an assistive device, could lift up to 50 pounds occasionally and 25 pounds frequently, and would be occasionally restricted in climbing, stooping, kneeling, crouching, and crawling, and was unrestricted in reaching, handling, fingering, and feeling. Tr. 235-36. Defendant argues that the ALJ's omission of Dr. Teed's and Dr. Ring's opinions was harmless because her reasons for discounting Dr. Laura Vandenheed's opinion (which Plaintiff does not challenge) apply equally to the opinions of Dr. Ring and Dr. Teed. Doc. 14, at 13.

Social Security Regulations provide that the ALJ will evaluate every medical opinion received, regardless of its source. 20 C.F.R. §§ 404.1527(c), 416.927(c). While "[a] decision of the ALJ will not be reversed for errors that are harmless," *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005), the Court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Court cannot so conclude, especially considering that Dr. Vandenheed's opinion extended only to Plaintiff's physical limitations, not his mental limitations. *See* Tr. 58, 266-68. Consequently, the ALJ's failure to evaluate the medical opinions of Drs. Ring and Teed cannot be viewed as harmless error.[3]

---

[3] Plaintiff argues that the vocational expert, Mr. Kelman, testified that a hypothetical person with limitations based on Dr. Teed's opinion could not perform any work in the national economy. Doc. 13, at 8. The Court notes that Mr. Kelman testified only that those limitations "would preclude past relevant work or work for which [the hypothetical person] would have transferrable skills." Tr. 43. Furthermore, Mr. Kelman's testimony is not dispositive of Plaintiff's disability determination because the

## IV. Remand.

Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009). Here, it is not clear that Plaintiff's impairments would be severe, or that he would ultimately be found disabled, if all of the medical evidence were considered. On remand, the ALJ should evaluate the opinions of Drs. Teed and Ring, as well as the other medical opinions in the record.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.

2. The case is **remanded** for further proceedings consistent with this order.

Dated this 7th day of September, 2012.

David G. Campbell
United States District Judge

---

ALJ did not reach that step of the sequential evaluation process. The ALJ's analysis terminated at step two because she found that Plaintiff's impairments were not severe. *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."); § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment . . . we will find that you are not disabled.").